## STATE *v.* GOULDING.

In a complaint, under an ordinance of the city of Portsmouth, which provides that "no person shall be or remain upon any sidewalk, &c., to the annoyance of any person," &c., it is not enough to pursue the very language of the ordinance, its literal terms embracing cases not within its equity and spirit; and, as the object of the ordinance was to prevent the incumbering of the sidewalks by the unreasonable and illegal use of them, and as the complaint set out no such use, it would, on motion, be quashed.

APPEAL from the police court of the city of Portsmouth.  The complaint was that said Goulding, at Portsmouth, on, &c., "was and remained a long time upon the sidewalk on the northerly side of Market square, in said Portsmouth, to the annoyance and disturbance of all persons passing and repassing, contrary to the form of the ordinance in such case made and provided, contrary to the form of the statute," &c.

The respondent moved to quash the complaint for the following among other reasons:

Because it is not set forth in said complaint that he illegally, or wilfully, or maliciously, or wrongfully remained upon said sidewalk;

Because it is not alleged, in said complaint, that any person was annoyed or disturbed, or that any person or persons did pass by, and were annoyed or disturbed;

Because the city, by their charter, had no power to pass such a by-law or ordinance, and the ordinance is illegal.

The charter of the city of Portsmouth, as it appears in the Pamphlet Laws of 1849, was referred to by the court.

The ordinance upon which the complaint was founded was made in due form by the city council of Portsmouth, and was as follows: "No person shall be or remain upon any sidewalk, or upon any door-step, portico, or other projecture from any house or other building, to the annoyance of any person," &c., on penalty of forfeiture or payment of a sum not less than one dollar, nor more than five dollars.

*C. H. Bell*, for the State.

1. That the city of Portsmouth had the right and power to pass the ordinance in question, will be seen by the charter (sec. 19, clause 17); namely, the right to prohibit "any amusement or practice

having a tendency to annoy persons passing in the streets or on the sidewalks," &c.

2. The annoyance to the persons passing is the special object against which the ordinance guards. It makes no distinction as to the intent of the wrong-doer, whether it be illegal or legal, malicious or innocent. One may encumber and impede the passage of the sidewalk, meaning no harm by so doing, but the fact that such an impediment exists makes it an annoyance. One may leave a load of coal or wood on the public walk, meaning to remove it within a proper time, but is unable to do so from sickness or accident; but the fact that the act was done innocently makes it no less an annoyance and hindrance to the public. The *animus agendi* need not be called in question, but only whether the act constituted an annoyance within the meaning of the ordinance. It is not necessary that the annoyance should be alleged to be to any particular person; it is sufficient to aver an annoyance to all persons passing, as will be seen in the forms for analogous cases. Whart. Prec. 405–410; Bell's Justice 403, sec. 1017; 389, sec. 994.

3. The stating of the offense as being "contrary to the form of the ordinance," &c., is not necessary, and may be rejected as surplusage; as it is stated as being "contrary to the form of the statute," &c. The charter gave certain legislative powers to the city of Portsmouth, and all ordinances passed under and in accordance with said charter are, as a part of the statute law, binding upon all within the limits of the city.

*Goodall*, for the defendant.

1. The ordinance is too uncertain. It does not define whether the person shall be moving or stationary. A person might under this complaint and ordinance be fined, if in walking upon the sidewalk, on his ordinary business, he happens, without any fault, to annoy some person. What does the ordinance mean? · Does it mean that I shall not walk across a step, portico, or other projection from any house or building, when it projects into the sidewalk, nor upon the sidewalk in front of any building, but must walk in the street if any person were annoyed thereby? Or does it mean that I shall not go and stop upon any sidewalk? The ordinance does not say. It needs an interpreter. The ordinance, if it means any thing, is this, under whatever circumstances I am on the step, portico, or sidewalk, if I happen, however innocently, to annoy any person passing, I am in for a penalty of not less than one dollar. If I dun a man on the sidewalk, to collect my debt, he can haul me before the police court for annoying him on the sidewalk. The city have no power thus to debar persons from the free use of sidewalks. By the charter they had no power to pass such an ordinance. Charter, sec. 19, clause 11. The city have power to prevent incumbering the sidewalks with "carriages," &c., " or any things whatever," &c. A person passing on the sidewalk, or standing thereon, is not a thing. They have no power to debar persons from all lawful, legitimate uses of sidewalks which the constitution and laws of New-Hampshire give. Charter, sec. 19.

2. The complaint must set forth such an offense that the court can see that the respondent has illegally, willfully, and maliciously, and for an improper purpose, been and remained upon the sidewalk, and that thereby some person was actually annoyed. Now the complaint sets forth no such thing. It only sets forth in substance that the defendant legally and for a proper purpose was and remained a long time upon the sidewalk, as the law presumes the defendant was there legally and for a proper purpose, unless the contrary is distinctly alleged as well as proved. It does not set forth that a single person passed, or that a single person was annoyed. The law does not presume this, either, without distinct allegations and proofs. No judgment could be entered upon this complaint, for it sets forth no offense.

3. The complaint does not set forth what ordinance is meant, whether of the State or some city. It may be of Manchester or Concord, for aught the defendant knows. In short, the defendant does not know, by the complaint, what evidence is required. Is he required to bring evidence as to a time he was standing on the sidewalk talking with a friend, or at another time when he accidentally ran against another's person, or when he was walking at other times with two or three others, and thus it was less convenient for others to pass by him, and others were somewhat annoyed thereby, or when he laughed aloud at a ludicrous fall of a man not quite sober, or when he dunned a man for his pay? What is the defendant to answer to?

BELLOWS, J. The complaint alleges that the respondent was and remained a long time upon the sidewalk, on the northerly side of Market square, in said Portsmouth, to the annoyance and disturbance of all persons passing and repassing, contrary to the form of the ordinance, &c. This is substantially in the words of the ordinance, which provides "that no person shall be or remain upon any sidewalk, &c., to the annoyance of any person," &c. The motion to quash is based, among other things, upon the want of any statement of the length of time the defendant remained on the sidewalk, or that he was illegally or wrongfully there, or that some person was annoyed, &c.

If the ordinance is to be literally construed, it would often deprive a person of the lawful use of the sidewalk, as it is easy to see that it would often be impossible to pass through a crowd upon it without annoyance to some one. But the object of the ordinance, we think, was to prevent the incumbering of sidewalks by the illegal use of them, by the occupation of them by one or more persons, not for the purpose of passage in a reasonable manner, or for taking across them, into dwelling-houses, stores or shops, fuel or merchandise, with a due regard to the convenience of others; or for other lawful purpose; but occupying it in an unreasonable manner, either as to the mode or duration of time, so that other passengers would be unlawfully delayed or annoyed. To prohibit such illegal use or occupation of the sidewalk the ordinance was passed, and the complaint ought to have described the offense in such way as to show

an illegal use of the sidewalk by the respondent, and that other persons were annoyed by it.   But the allegations in this complaint may all be true, and yet the respondent may have been in the lawful use of the sidewalk, and consequently had committed no offense.

The general rule undoubtedly is, that it is sufficient to describe the offense in the language of the statute, but to this there are many exceptions, and the case before us comes within the exception where the words of the statute, by their generality, embrace within their literal terms cases which are not within their equity and spirit; *State* v. *Beirce*, 27 Conn. 319; *Commonwealth* v. *Stark*, 19 Pick. 307; which was an indictment under a statute making it an offense in "any one who shall, knowingly and willfully, dig up, remove, or carry away any human body"; and it was held that every removal of such body was not a crime, and that the indictment was bad because it did not state that the removal was for purposes of dissection, although not so expressed in the statute.   So in *Commonwealth* v. *Collins*, 2 Cush. 556, which was an indictment under a statute prohibiting the keeping open a shop or warehouse on the Lord's day; and the allegations were that the defendant "did keep open his shop, and did suffer persons to resort thereto," on a certain Lord's day; the court held that the intent of the statute was to prohibit the keeping open of the shops, &c., for business, or other unlawful purpose, and not to restrain its being opened for necessity, as in case of fire, or for some lawful purpose, as for a religious meeting; and that, for not stating the unlawful purpose, the indictment was bad.   This case is directly in point, and we think it was rightly decided.

When the words of the statute are descriptive of the offense, then it is sufficient in the indictment to use those words; but here the general words of the statute are limited, by the obvious intention of the legislature, to the case of an unlawful use of the way; and therefore all the circumstances and ingredients which constitute the offense are not set out, as by the rules of good pleading they must be; *Rix* v. *Horne*, Cowp. 672, 682; recognized in *State* v. *Follet*, 6 N. H. 53; 2 Hawk. P. C., ch. 25, secs. 115, 111; where it is laid down that it is not always sufficient to preserve the very words of the statute, unless by so doing you fully, directly, and expressly allege the fact whereof the offense consists, without the least uncertainty or ambiguity.   So is 3 Bac. Abr. 113; *State* v. *Robinson*, 29 N. H. 274.

That it is no answer to say that the indictment preserves the very language of the statute, the authorities are numerous; among them, in addition to those already cited, are *Rex* v. *Mason*, 2 D. & E. 586; *Davey* v. *Baker*, 4 Burr. 2471; *Rex* v. *Mason*, 2 Str. 1127; *Rex* v. *Stading*, 1 Str. 497; *United States* v. *Mills*, 7 Pet. 138, 142; *State* v. *Barrett*, 42 N. H. 466; *Anthony* v. *State*, 29 Ala. 27; *Commonwealth* v. *Stout*, 7 B. Mon. 247; *State* v. *Fleetward*, 16 Mis. 448.

Upon these principles the complaint

*Must be quashed.*